IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.

2013 AUG -7 A 9 36

CLERK _____
SO. DIST. OF GA.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CASE NO.: CR213-009 |
| | : | |
| CORTEZ JIMEL ARBERY | : | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Cortez Arbery ("Defendant") has been charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and possession of a stolen firearm, in violation of 18 U.S.C. § 922(j). Defendant filed a Motion to Suppress, to which the Government filed a Response. The undersigned conducted an evidentiary hearing on June 11, 2013, at which Eric Melendez and Jeremiah Wells with the Glynn County Police Department/Glynn Brunswick Narcotics Enforcement Team ("GBNET") testified. The parties filed post-hearing briefs.

## FINDINGS OF FACT

The credible testimony at the hearing establishes the following:

Sergeant Corey Sasser ("Sasser") approached Investigator Melendez ("Melendez") on the afternoon of January 10, 2013, and provided information about Kyle Williams ("Williams") who was seen at a residence on Stafford Avenue in Brunswick, Georgia, who had a warrant out for his arrest. Approximately two to three weeks prior to this date, Williams was believed to have fired a weapon when police officers were

responding to a call about one to two miles away from Stafford Avenue. Sasser showed Melendez a picture of Williams and described Williams as being approximately six feet tall and having a thin to medium build, dreadlocks, and a medium complexion. Saaser also informed Melendez that Williams has a reputation for having a propensity for violence. Melendez testified that police had received several calls over the previous three (3) months concerning incidents of burglaries, fights, and drugs in the Stafford Avenue area. In fact, Melendez testified that he had responded to a call in that area on New Year's Eve and that many of the residents were trying to get involved in the situation and interfere with police activities, causing myriad safety issues for the police.

Sasser and Melendez drove to 117 Stafford Avenue in Melendez's unmarked police car. Four (4) other officers went to the Stafford Avenue area in different vehicles.[1] Sasser and Melendez saw no one at that address matching Williams' description. However, Sasser looked behind them and said that 113 Stafford Avenue was the address. Upon reaching that address, there was a young male in the driveway who matched Williams' description and could have "possibly" been Mr. Williams. (Doc. No. 25, p. 9). Officers, with their guns drawn, approached the people standing in the yard, including Defendant, and ordered them to get on the ground. The people complied with the officers' orders. Melendez noticed that Defendant was wearing two (2) pairs of pants, which stood out to him because the day was not a cold one, even for January. Melendez frisked Defendant and felt a cylindrical object in his groin area, which Melendez knew from his training and experience to be the barrel of a gun.

---

[1] Investigator Wells was one of the other officers who went to the Stafford Avenue area on the date in question. Wells testified that he had prior experience with Williams when he was a patrol officer and had reason to believe that Williams and any people with him would be armed. Wells also testified that the Stafford Avenue area is a high crime area.

2

Melendez placed handcuffs on Defendant and stood him up, at which time Defendant said, "'It's in my right pocket.'" (Id. at p. 11). Melendez retrieved a .38 revolver from Defendant's pocket, and Defendant was placed under arrest for carrying a concealed weapon. Melendez ran a warrants check on Defendant. This check revealed that Defendant was wanted in North Carolina on a felony warrant and that he was a convicted felon. Melendez stated that, even if he had not frisked Defendant at that point, he would have asked for identification and run a warrants check on him.

Defendant contends that officers illegally searched and seized him. Defendant also contends that the frisk and search were not supported by reasonable suspicion or probable cause, nor were they made pursuant to a warrant or consent.

## DISCUSSION AND CITATION TO AUTHORITY

Defendant asserts that officers lacked probable cause to stop or detain him, as Melendez testified that he had neither probable cause nor reasonable suspicion. Defendant contends that the officers were in the area based on a tip that Williams was present at 117 Stafford Avenue, and there was no indication that any unlawful activity was happening in the area.

There are three types of police-citizen encounters "which invoke the [F]ourth [A]mendment: police-citizen communications involving no coercion or detention; brief seizures or investigative detentions; and full-scale arrests." United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir. 1989). Investigative detentions involve "reasonably brief encounters in which a reasonable person would have believed that he or she was not free to leave." Id. (citing Terry v. Ohio, 392 U.S. 1 (1968)). "In order to justify a [F]ourth [A]mendment seizure, the government must show a reasonable and

3

articulable suspicion that the person has committed or is about to commit a crime[.]" Id. "To determine the legality of an investigatory stop under the Fourth Amendment, [a court] first ascertain[s] whether the stop was justified at its inception." United States v. Griffin, 696 F.3d 1354, 1358 (11th Cir. 2012). A court then asks "whether the officer's actions were reasonably related in scope to the circumstances that justified the stop in the first place[ ]" under the "totality of the circumstances—the whole picture." Id.

The evidence before the Court reveals that, under the totality of the circumstances, officers had reasonable suspicion that criminal activity may have been afoot at 113 Stafford Avenue. Melendez was shown a picture of Williams and was given a general physical description. Officers had received a call that Williams was seen at 117 Stafford Avenue, which would have been only two (2) houses down from the address where the officers stopped. Officers knew that Williams had a propensity for violence and that he and anyone with him may have been armed. In fact, a warrant had been issued for Williams' arrest for aggravated assault based on allegations that he had fired a weapon. Officers also knew that this area of town is an area of high crime. Officers saw a person standing in the driveway of 113 Stafford Avenue who they believed matched Williams' general physical description—a black male who was approximately six (6) feet tall and had dreadlocks, a slight to medium build, and a medium complexion. Though this person ended up not being Williams, officers had a reasonable suspicion *at the time* that this person could have been Williams. This stop and frisk of the persons at 113 Stafford Avenue was of extremely limited duration. Accordingly, the officers legally conducted a brief Terry frisk of the persons at 113 Stafford Avenue.

4

The undersigned notes Melendez's testimony that he had neither probable cause nor reasonable suspicion of criminal activity on Defendant's part at the time officers approached the scene. However, this is a legal conclusion for the Court to make. Additionally, and as discussed above, officers had reasonable suspicion, based on the totality of the circumstances at the time of the officers' approach to 113 Stafford Avenue, that the safety of officers (and perhaps the public) may have been at risk. Once an officer has stopped an individual, he may conduct a pat down or frisk for weapons if he reasonably believes that his safety, or the safety of others, is threatened. United States v. White, 593 F.3d 1199, 1202 (11th Cir. 2010).[2]

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's Motion to Suppress be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this 7th day of August, 2013.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

---

[2] The undersigned notes that Melendez testified that Defendant would have been frisked incident to his arrest after the warrants check revealed that there was an outstanding warrant for his arrest. Defendant states in his Reply that officers had no information causing them to believe that there were any outstanding warrants for his arrest prior to the illegal search and seizure. However, as discussed above, officers had reasonable suspicion to stop and frisk Defendant and the other individuals at 113 Stafford Avenue.

5